UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-419-JBC

KIMBERLY ADAMS, PLAINTIFF,

V.     **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income (DE 11, 15). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court

does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a forty-four-year-old female with a high-school-equivalent education and past relevant work ("PRW") as a nurse. AR 17, 70, 105, 111. She alleges disability beginning on December 12, 2000, as a result of anxiety, depression, fibromyalgia, and chronic lower back, right hip and right leg pain. AR

17, 99. The plaintiff filed claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on May 28, 2003, which were denied initially and on reconsideration. AR 16, 56-60, 411-15, 417-24. After a hearing held on November 30, 2004, Administrative Law Judge ("ALJ") Charles J. Arnold determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity. At Step 2, the ALJ found that the plaintiff's probable fibromyalgia (diagnosis of exclusion) is a severe impairment. The ALJ then determined that the plaintiff's impairment did not meet or equal a listing in the Listing of Impairments at Step 3. At Step 4, the ALJ found that the plaintiff was unable to perform her PRW. The ALJ concluded at Step 5, however, that the plaintiff could perform a significant number of other jobs in the national economy at the light work level. AR 22. On October 31, 2006, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, *see* AR 7-11, and the plaintiff then commenced this action.

**III. Legal Analysis**

The plaintiff objects to the ALJ's determination for the following reasons: (1) the ALJ erred in his evaluation of the objective medical evidence and in his determination of the plaintiff's credibility;[1] and (2) the ALJ erred in determining that

---

[1] The objections relating to the objective medical evidence and the credibility determination are analyzed together because the issues are interrelated. The court also notes that even though the plaintiff has not objected specifically to the ALJ's Residual Functional Capacity ("RFC") finding, that step is affected by the ALJ's

the claimant's depression and anxiety were not severe impairments. The court will consider these arguments in turn.

**A. The ALJ's Evaluation of the Objective Medical Evidence and Credibility Determination**

The claimant argues that the ALJ erred in his determination because he did not properly consider the claimant's testimony regarding her pain and, thus, improperly evaluated the claimant's credibility. Additionally, the claimant contends that the ALJ did not properly analyze the applicability of the objective medical evidence in the record.

**1. Relevant legal standards**

The Commissioner is required to consider all of a claimant's symptoms, including pain, in determining whether she is disabled. 20 C.F.R. § 404.1529(a). Before these symptoms will lead to a finding of disability, however, medical signs must exist which show the claimant has an impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). When such medical signs are present, the Commissioner must then evaluate how the intensity and persistence of the symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(c); *see also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir.

---

evaluation of the evidence and credibility determination. The RFC is defined as what a claimant can do on a sustained, regular, and continuing basis. Cohen v. Sec'y of Health and Human Servs., 964 F.2d 524, 530 (1992).

1986)). In performing this inquiry, the ALJ must consider the objective medical evidence, evidence of the claimant's daily activities, the frequency and intensity of the claimant's pain, any precipitating or aggravating factors, any medications taken to alleviate the pain, and any other measures taken to remedy the claimant's pain. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 404.1529(c)(3).

The "credibility" of the claimant's statements about her pain and its functional effects is "the degree to which the statements can be believed and accepted as true." Social Security Ruling ("SSR") 96-7p. Although an ALJ's credibility findings are to be accorded significant deference, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); (*King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984) (finding that the ALJ's credibility determination is entitled to great deference but must still be supported by substantial evidence).

Where the medical evidence establishes an impairment which could reasonably be expected to cause disabling pain, an ALJ cannot rely solely upon an absence of objective proof of the severity of pain as support for an adverse credibility finding. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). The ALJ cannot reject the claimant's allegations of severe pain based upon only the medical evidence, but must consider all relevant evidence in the record. *Felisky*, 35 F.3d at 1039. The ALJ must consider the claimant's testimony about the intensity and persistence of her pain and other symptoms and about how those symptoms

5

affect her ability to work, and cannot reject that testimony "solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2); SSR 96-7p ("Allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.").[2] The claimant does not need to establish the severity of her pain through objective evidence, and the ALJ may not reject her claim of disabling pain solely because the degree of pain is not objectively established. *See Jones v. Sec'y of Health and Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991).

**2. The ALJ's findings**

The ALJ determined that the claimant has a severe impairment of fibromyalgia; this finding is supported by substantial objective medical evidence. Thus, there is evidence of an underlying medical condition that could cause the claimant's alleged symptoms. The ALJ must then determine how the impairment affects the claimant's ability to work. In determining the claimant's RFC, the ALJ must consider all evidence in the record, including the claimant's testimony regarding her symptoms.

The ALJ considered the claimant's testimony but granted it little probative weight in determining her RFC. The ALJ found that "the claimant's drug-seeking

---

[2] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).

behavior and patently untrue accusations severely undercut any credibility." AR 20. The ALJ combined those findings with the "near total lack of corroborating objective medical evidence," to give her testimony little probative weight. *Id.*

The ALJ's reliance on the lack of objective evidence supporting the claimant's pain allegations was an improper application of the relevant legal standards.[3] However, the ALJ did not rely *solely* on that ground. Thus, the court

---

[3] For a diagnosis of exclusion, where the medical impairment is not fully understood, it may not be possible to objectively demonstrate the claimant's limitations through medical testing. The ALJ's reliance on test results showing normal findings is not a valid basis for finding the plaintiff's complaints not credible or her impairments not disabling. The medical reports are supposed to be "considered in tandem" with the claimant's testimony regarding her symptoms. *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). The claimant "may rely in part on her own testimony *in combination with* objective medical evidence in order to establish that she is disabled." *Id.* (emphasis in original). Even though the claimant must show that "she has a medically ascertainable condition that reasonably could be expected to cause her symptoms," she "is not required to prove the exact cause of her condition." *Cohen*, 964 F.2d at 529.

In *Cohen*, the claimant was diagnosed with chronic fatigue syndrome, which is a condition where the exact nature is not currently known, and thus it is impossible for the claimant to identify the exact cause of the medical condition. In *Cohen*, the ALJ considered the claimant's professional ballroom dancing, part-time enrollment in law school, and work in founding a national support group, as evidence that she could perform substantial gainful employment. The court found that Cohen's level of activity was "a tribute to her courage and determination in refusing to surrender to the debilitating effects of her illness. Her activities do not, however, warrant a finding that Cohen maintained the residual functional capacity to perform her previous work . . . or to maintain substantial gainful employment in the national economy." *Cohen*, 964 F.2d at 530. Cohen's symptoms could not easily be reduced to objective medical evidence.

The plaintiff states that the failure of the physicians "to diagnose the cause of her back pain is not a sufficient reason to disregard her allegations." DE 11, at 10. Adams points out that her doctors did not doubt the legitimacy of her back pain. She claims her doctors recognized that she had the classic tender points of pain associated with fibromyalgia and that was objective evidence of the pain and

will defer to the ALJ's credibility determination to give the claimant's testimony little weight, as long as the ALJ's findings were supported by substantial evidence.

Regarding the drug-seeking behavior, the ALJ referred to two instances in which the claimant, having lost her drugs, went to the doctor for more pain medication. Adams told her physician, Dr. Click, that she lost her prescription drugs when her purse was stolen and again when her mother flushed her drugs down the toilet. AR 20. The ALJ also refers to Dr. Click's treatment notes as revealing "fluctuating pain complaints with no discernible pattern or response to the varying treatments and prescribed therapies." *Id.* On March 29, 2001, the police came to the doctor's office to write a report about the stolen purse and drugs, and the doctor made a note in the treatment records to "get [a] copy of the police report." AR 197. In the visits between the two incidents, Dr. Click made comments about how long the prescribed medication should last.[4] On November

---

her condition. Additionally, she asserts that her doctors believed she was in pain and the fact that they gave her strong pain medication is evidence that she was in severe pain. Despite this evidence, the ALJ found that the objective medical evidence failed to confirm the plaintiff's complaints regarding her symptoms and pain.

[4] On September 11, 2001, the doctor notes, he told Adams she could take more medication (5 a day) on the days she had physical therapy, but that he did not want her to take any more than that. AR 187. For the medication prescribed on September 20, 2001, the treatment notes state that her drugs "must last her 2W." AR 186. On October 5, 2001, the doctor noted that the claimant's prescribed Hydrocodone "should last" three weeks. *Id.* The drugs prescribed on October 26, 2001, were apparently supposed to be refilled after two weeks, and the November 1, 2001, drugs were for only one week. AR 185. On November 8, 2001, she was prescribed another week's worth of drugs. On November 15, 2001, the treatment notes state that he refilled her hydrocodone and that "this should last her about 2

20, 2001, Adams called the doctor claiming that the Hydrocodone made her sick. When the doctor asked her to bring in the bottle with the remaining pills, Adams stated that her mother flushed them. AR 183. Her mother then got on the phone to confirm that she had in fact flushed the medication. *Id.* The ALJ found that the claimant's loss of her medication two times within an eight-month span was "highly suspicious." AR 20. The plaintiff points out that she went to Dr. Click more than forty times over two years for treatment and that he continued to give her prescription drugs for her chronic pain, even increasing her dosage. DE 11, at 2; *see* AR 165-217. Despite the plaintiff's strong contention that she is not a drug-seeker, the court finds substantial evidence in the record to support the ALJ's finding that these instances reduce the claimant's credibility.

The "patently untrue accusations" that undercut the claimant's credibility, according to the ALJ, were the claimant's allegations against Dr. Click during one of her examinations. Dr. Click's treatment records show that Adams was very upset at her examination on August 30, 2001. AR 188. Adams claimed Dr. Click was rude to her and took his anger out on her, that he yelled at her and other patients, and she stated that she felt threatened by Dr. Click. The doctor, in his notes, states that he does not remember doing any of the things Adams accused him of doing, and that he told her that she should find another physician if she felt threatened by him. Additionally, Adams claimed that the doctor had not done

---

weeks hopefully." AR 183.

certain tests on her, and the doctor proceeded to show her in the chart where those exams were performed. *Id.* The plaintiff explains this incident by showing that she was upset about a physical therapy bill, especially because the physical therapy was not helping the pain, and she was in severe pain. Dr. Click told Adams she could take additional pain medication on the days when she has physical therapy. AR 187. Again, based on the substantial evidence in the record, the court will grant deference to the ALJ and his determination that these facts make the claimant's statements less credible.

The court finds that there is substantial evidence in the record to support the ALJ's credibility determination. Additionally, although the ALJ improperly evaluated the objective medical evidence, this was a harmless error under the relevant legal standard because the ALJ did not rely solely on those findings in reaching his credibility determination.

### B. The ALJ's Determination of Severe Impairments

The plaintiff asserts that the ALJ erred in determining that her depression and anxiety were not severe impairments and that the ALJ's determination is not supported by substantial evidence. At step 2, the claimant bears the burden of proving that her impairments are severe. 20 C.F.R. § 404.1512(a). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities include the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b)(1)-

(6).

"[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985)); SSR 85-28. Additionally, for an impairment to be determined "severe" it must be expected to last for a period of at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 217-23 (2002)*; Murphy v. Sec'y of Health and Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). Nonetheless, an ALJ should not conclude that a claimant's condition is non-severe if the ALJ "is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities." SSR 85-28.

The evidence in the record does not show that the claimant's depression or anxiety caused any limitations or restrictions that had more than a minimal effect on the claimant's ability to do basic work activities. The plaintiff was given medication by various doctors for her mental impairments, but those doctors did not express opinions about how those impairments limited her abilities. The ALJ considered the opinions of Drs. Brake and Perritt, who found that the claimant's impairments imposed only mild limitations on her daily living activities, social functioning, ability to maintain concentration, persistence, or pace, and who found no episodes of decompensation. The court finds that the ALJ's determination that

11

the claimant's depression and anxiety are non-severe impairments is supported by substantial evidence.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 11) is **DENIED**.

Signed on  March 31, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY